Dear Representative David:
This is in response to your request for an opinion regarding central warehousing of intoxicating liquors as provided by 11 CSR 70-2.230 of the Rules and Regulations of the Supervisor of Liquor Control. Specifically, you stated your request as follows:
 1. Whether the regulation [11 CSR 70-2.230] should be interpreted by the Division [of Liquor Control] to permit only the central warehousing of intoxicating liquors in excess of 5% by weight.
 2. Whether the Division has the requisite statutory authority to promulgate a regulation that permits central warehousing of intoxicating liquor by multiple store retailers.
 3. Whether the Regulation, if applied to the central warehousing of beer containing less than 5% alcohol by weight, directly conflicts with Section 311.181, Mo. Rev. Stats., which requires Missouri beer wholesalers to "sell malt liquor or non-intoxicating beer" only in the designated geographic area described in their respective distribution agreements.
In responding to these three inquiries, it is useful to first address the issue of statutory authority raised in the second question. Section 311.660, RSMo 1978, prescribes the powers and authority of the Supervisor of Liquor Control as follows:
 The supervisor of liquor control shall have the authority to suspend or revoke for cause all such licenses; and to make the following regulations, without limiting the generality of provisions empowering the supervisor of liquor control as in this chapter set forth as to the following matters, acts and things:
* * *
 (10) To make such other rules and regulations as are necessary and feasible for carrying out the provisions of this chapter, as are not inconsistent with this law.
In view of the clear and unambiguous language used in Section 311.660, it is the opinion of this office that the Legislature intended to grant the Supervisor of Liquor Control the statutory authority to promulgate 11 CSR 70-2.230, which permits central warehousing of intoxicating liquor by multiple store retailers.
Next, in your first question, you have inquired as to whether 11 CSR 70-2.230 of the Rules and Regulations of the Supervisor of Liquor Control should be interpreted as permitting only the central warehousing of intoxicating liquors containing alcohol in excess of five percent by weight. Section (1) of11 CSR 70-2.230 provides that:
 (1) This regulation applies to all persons, firms or corporations who own and operate more than one (1) premises licensed to sell intoxicating liquor containing alcohol in excess of five (5) per cent by weight at retail.
Section (2) of the same regulation describes the manner in which a person, firm or corporation defined in Section (1) may make use of the central warehousing provisions. Specifically, Section (2) provides that:
 (2) Any person, firm or corporation defined in section (1) may, with the permission of the supervisor of liquor control designate one or more places as a central warehouse to which such intoxicating liquors ordered and purchased by such person, firm or corporation from licensed wholesalers may be delivered by licensed wholesalers, and at which such intoxicating liquors so owned by such person, firm or corporation may be stored; provided the name of such person, firm, or corporation shall be stamped upon the cases containing such intoxicating liquors immediately upon the receipt thereof at such central warehouse.
Section (3) of the same regulation provides in part:
 (3) Any person, firm or corporation defined in section (1) owning and storing such intoxicating liquors in a central warehouse as provided in section (1) may transfer all or any part of such intoxicating liquors so stored from such central warehouse to any premises licensed to sell such intoxicating liquors at retail which is owned and operated by the same such person, firm or corporation, and which is located in the same county in which such central warehouse is located, or is located in a county adjoining and contiguous to the county in which such central warehouse is located, but not otherwise; . . .
Although 11 CSR 70-2.230 does not specifically define the term "intoxicating liquors," the meaning of this term can be clearly inferred from the language of the regulation, taken as a whole. Initially, however, it should be noted that the reference to intoxicating liquor contained in Section (1) of the regulation describes which person, firm or corporation owning and operating more than one premise may central warehouse intoxicating liquor. This section designates that only those persons, firms or corporations licensed to sell intoxicating liquor containing alcohol in excess of five percent by weight at retail will be allowed to make use of the central warehousing provisions. Accordingly, a person, firm or corporation owning and operating multiple premises, but only licensed to sell intoxicating liquor containing five percent or less alcohol by weight would be prohibited from central warehousing those products.
Except for the description of intoxicating liquor, as set forth in Section (1), the regulation is silent as to precisely which type of intoxicating liquor may be stored in central warehouses. Without more, it could be inferred, therefore, that multiple store retailers could central warehouse any kind of intoxicating liquor, as defined in 11 CSR 70-2.010(2). However, given the use of the word "such" immediately preceding all subsequent references to intoxicating liquors contained in Sections (2), (3) and (4) of 11 CSR 70-2.230, this inference would not follow. It is the opinion of this office that the inclusion of this adjective in reference to intoxicating liquors must be interpreted as relating to the descriptive language in Section (1). Therefore, this office concludes that only intoxicating liquors containing alcohol in excess of five percent by weight may be stored in central warehouses for transfer, as provided by11 CSR 70-2.230.
Additional support for this position is contained in Section (2) of 11 CSR 70-2.230. That section provides that the name of the multiple store retailer "shall be stamped upon the cases containing such intoxicating liquors immediately upon the receipt thereof at such central warehouse." However, this stamping requirement appears to be only a remnant of past practices whereby, through a separate regulation, certain licensees were required to stamp all intoxicating liquor containing alcohol in excess of five percent by weight. Intoxicating liquors which contained five percent or less alcohol by weight were not subject to this regulation. In 1965, the separate stamping regulation was eliminated; however, for some unknown reason, this requirement was never removed from11 CSR 70-2.230. Although the stamping requirement of this regulation is essentially null and void, the fact that this requirement was made part of the central warehouse regulation clearly indicates that the term "intoxicating liquors" pertains now, as it did in the past, only to those products containing alcohol in excess of five percent.
Finally, in your third question, you ask whether the central warehousing regulation, if applied to beer containing less than five percent alcohol, directly conflicts with Section311.181, RSMo Supp. 1985, relating to distribution agreements. In view of the preceding opinion that central warehousing only applies to intoxicating liquors in excess of five percent, it is unnecessary for this office to take a position. However, your question suggests that there may be some confusion over the relationship between 11 CSR 70-2.230 and Section 311.181, RSMo Supp. 1985. In view of this, the following comments are provided:
Section 311.181 pertains only to private contracts between a wholesaler and brewer which specifically designate a geographic area within which the wholesaler is authorized to sell certain brands of malt liquor or nonintoxicating beer. Pursuant to this contractual agreement a wholesaler is barred from selling such products in Missouri except in the designated area described in the agreement. 11 CSR 70-2.230, on the other hand, only applies after the product is sold to the retailer. As discussed above, this regulation specifically prescribes the manner in which certain retailers may store the purchased liquor products. Therefore, it is apparent that there is a distinct difference between Section 311.181 and 11 CSR 70-2.230. As such, even if 11 CSR 70-2.230 would be interpreted as permitting the central warehousing of beer, it could not be said that the regulation conflicted with the statute.
CONCLUSION
It is the opinion of this office that (1) 11 CSR 70-2.230
permits only the central warehousing of intoxicating liquors containing alcohol in excess of five percent by weight; (2) the Division of Liquor Control, through the Supervisor of Liquor Control, has the requisite statutory authority to promulgate a regulation permitting such central warehousing; and (3) even if the central warehousing regulation were interpreted to include all intoxicating liquor, no conflict would exist between Section311.181, RSMo Supp. 1985, and 11 CSR 70-2.230.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General